S. M. EDGELL ET AL., Appellants, *v.* WM. N. MACQUEEN ET AL., Respondents.

### November 18, 1879.

1. Where the issue is as to whether a contract signed in his individual name by one of three partners is his own contract or that of the partnership, in the absence of evidence of any usage of the firm, or of special authority in the contracting partner to bind the firm in his own name, and where there is no proof of the other partners' knowledge or approval of the transaction, the undertaking will be taken to be that of the partner making the contract.

2. In such a case the admissions of the contracting party cannot be introduced to prove that the transaction was a partnership undertaking.

APPEAL from the St. Louis Circuit Court.
*Affirmed.*
GEORGE P. STRONG, for the appellants.
GIVEN CAMPBELL, for the respondents.

LEWIS, P. J., delivered the opinion of the court.

Plaintiffs allege that the defendants were partners, trading sometimes under the name of William H. Scudder & Co., and sometimes under the name of William N. Macqueen ; that a written contract was entered into between plaintiffs and defendants as follows :—

" PROVISION CONTRACT.

" ST. LOUIS, February 16, 1878.

" I have this day bought, and hereby agree to receive from Messrs. Edgell, Chamberlin & Co., one hundred thousand (100,000) pounds dry-salted clear-rib sides, at five and $\frac{3}{5}$ cents per pound (or $5.60 per 100 lbs.), to be delivered at Quincy, Ills., on board cars, sellers' option during the month of April, 1878 ; said clear-rib sides to be standard in every respect as required by the rules of the Union Merchants' Exchange of St. Louis, and to be paid for on delivery. This contract is subject in all respects to the rules and regulations of the said Union Merchants' Exchange, under which this contract is made.

" WM. N. MACQUEEN."

Plaintiffs further allege that they tendered the merchandise to defendants according to the contract, but defendants refused to receive or pay for the same, to the plaintiffs' damage of $1,000.

Defendant Macqueen pleaded bankruptcy, and the two other defendants, Miles Sells and William H. Scudder, answered with a general denial. The testimony was heard by a jury, and the court instructed that the plaintiffs were not entitled to recover.

The controversy turns chiefly upon the question whether the contract was the individual undertaking of Macqueen, or was the contract of his firm. The defendants, on

December 27, 1878, agreed upon articles of partnership " for the purpose of the packing of pork," the association to continue " only until the first day of April next, 1878." After the signatures to the articles, these words appear, viz. :

" The business of the firm to be conducted in the name of W. H. Scudder & Company."

There was no testimony showing that these words were or were not added at the time of the signing.

The testimony of defendant Macqueen was relied on principally, by the plaintiffs, for the purpose of showing that the contract was a partnership transaction. With reference to his authority to use his own name in transactions for the firm, his statements were altogether indirect and inconclusive. When asked if, during the continuance of the partnership, he had done any business of the same sort on his own account, he answered that during that time he filled a few orders for some of his old customers in his own name. He did none of this business on his own account after the firm had meat for the market. He filled some such orders in January. He made some contracts, not in writing, on account of the firm, for " cooperage, salt, and such things." The bills were made out against him individually ; he marked them correct, and sent them to the office of the firm, where they were paid. He testified that " it was clearly understood all the time that the business should be conducted under the name of W. H. Scudder & Co." This is, substantially, the sum of all the testimony offered in support of the plaintiffs' allegation that the defendants, as partners, " sometimes traded under the name of William N. Macqueen." It cannot rationally be considered as even tending to sustain the averment.

Plaintiffs undertook to prove by the same witness that the contract sued on was made as a partnership contract, with the full knowledge and approbation of defendant Scudder. The witness, after repeated efforts to explain his own private understanding, and when confined to an exact account of his conversation with Mr. Scudder in this con-

nection, said : " I can't exactly tell the language. It was about buying clear-rib sides. I thought it was a good time to buy ; a good thing to take in this meat at the price it was going at. The substance of the talk was, the price the meat was going at was satisfactory, and that it was a good time to buy. I think that was about all. * * * I think I talked about the propriety of buying meat — a good time to buy meat ; meat was low. Q. Why did you talk with Mr. Scudder? A. Because I wanted the means for purchasing meat. Q. Why didn't you go to some other man? A. Because I considered I was acting for the firm. Q. And went to him as a member of the firm? A. Certainly, sir. Q. Then what did you do? A. I went to see him about the meat, for Mr. Chamberlin." The witness does not state that this particular contract was the subject of the conversation, nor even that defendant Scudder acquiesced in his general suggestions about the propriety of buying meat. So far as Scudder was concerned in that conversation, leaving out of view the private impressions of the witness, the whole talk was as naturally referable to a contemplated individual venture of the witness as to anything else. Such testimony is too unsubstantial to go to a jury for the purpose of proving that defendant Scudder knew and approved of the making of the contract sued on, as a partnership transaction. Some other statements were made by the witness in this connection, but all were to the same general effect.

The same witness testified that at the time when this contract was signed he made a similar one with the plaintiffs for a like quantity and description of meat, to be delivered during the month of March. When the time arrived for the fulfilling of that contract, he then, for the first time, informed Mr. Scudder of its existence, and requested him to pay for the purchase. Scudder refused to accept or recognize the transaction in any way. The witness said that he would himself assume it and bear the loss, if any, if Scud-

der would pay for the meat and carry it on the market. It was finally so arranged that the witness gave his own note for the necessary sum, on which the money was advanced by the Henry Ames Pork-Packing Company, of which Scudder was president; that company taking the warehouse receipt, and holding the meat by way of security. Up to that time the witness had never given any notice of either purchase to either of his partners. Nor did he give them any notice of the contract here sued upon until after it had matured and the plaintiffs were seeking their purchase-money. The price of pork had fallen in the meantime, and Macqueen, being without means, was unable to meet his engagements. The direct tendency of all this testimony was, manifestly, to show that both purchases were private ventures of the witness Macqueen.

If the plaintiffs had succeeded in proving that, either by usage of the firm or by special authority, the name of William N. Macqueen was used to authenticate the partnership transactions, or if it were otherwise clearly shown that this was a partnership contract, it would of course be unnecessary to prove that either of the other defendants knew or approved of the purchase when it was made by Macqueen. In such a state of the case, also, the testimony just referred to might bear a construction consistent with the partnership theory. But there was no such proof. Macqueen said in his testimony that he considered he got Scudder's consent to buy the meat; that he " bought on what he [Scudder] said." Yet he did not once squarely state as a fact that the purchase was made by himself as a partner, doing the business of the firm. On the contrary, he testified : " Of my own knowledge, I cannot state that I was buying it [the meat] for the firm." He was at one time asked by plaintiffs' counsel for whom he bought the meat mentioned in the contract sued on. The court, upon defendants' objection, refused to let him answer, because the contract itself furnished a sufficient answer. Afterwards, however,

he was permitted to testify fully about the intent and purposes of the contract, and was given a sufficient latitude to state distinctly on whose account the contract was made. His statements were uniformly evasive or inferential.

Plaintiffs complain of the court's refusal to admit in evidence certain admissions made by Macqueen as binding on his partners. In our view of the testimony, there was no sufficient evidence that the transaction in question was a partnership one, to lay a proper foundation for such admissions. The admissions of an alleged partner cannot be heard to prove the partnership. Nor can they be introduced to prove that a transaction pertained to the partnership, and not to the individual making the admissions, when that is the very matter in dispute.

Upon the whole record, we are satisfied that no substantial error was committed, and that the judgment was for the right party. The judgment is affirmed, with the concurrence of all the judges.